### ELLINGTON et al. v. BRYANT et al.
#### (No. 3307.)

Court of Civil Appeals of Texas. Texarkana.
Dec. 28, 1926.

Rehearing Denied Jan. 13, 1927. Writ of Error Dismissed for Want of Jurisdiction March 16, 1927.

**1. Limitation of actions ☞73(7)—Three and four year statutes of limitations held inapplicable to suit to cancel married woman's deed (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5690, 5708; three-year statute of limitation).**

Three and four year statutes of limitations *held* inapplicable to suit to cancel deed of married woman, for while Vernon's Sayles' Ann. Civ. St. 1914, art. 5690, is applicable to such suit, its operation is suspended by article 5708 in case of married woman.

**2. Acknowledgment ☞55(2)—Married woman executing deed held not entitled to cancellation on ground that officer taking acknowledgment did not comply with statutes (Vernon's Sayles' Ann. Civ. St. 1914, arts. 1114, 6802, 6805.)**

Married woman who executed deed *held* not entitled to have it canceled on ground that officer taking acknowledgment did not comply with Vernon's Sayles' Ann. Civ. St. 1914, arts. 1114, 6802, 6805, in absence of fraud, where she fully understood transaction, and full compliance with statute would not have changed her action.

**3. Acknowledgment ☞55(2)—General rule is, in absence of fraud or mistake, that officer's certificate of married woman's acknowledgment of deed conveying separate estate is conclusive of fact matters stated therein.**

General rule is, in absence of fraud or mistake, that officer's certificate of acknowledgment of married woman's deed is conclusive of matters stated therein as facts, as against married woman who appeared before him to acknowledge such deed conveying land belonging to her separate estate.

**4. Acknowledgment ☞59 — Married woman must prove noncompliance with statute prescribing duty of officer taking her acknowledgment to deed (Vernon's Sayles' Ann. Civ. St. 1914, arts. 1114, 6802, 6805).**

Married woman, asserting that Vernon's Sayles' Ann. Civ. St. 1914, arts. 1114, 6802, 6805, relative to acknowledgment of married woman's deed, have not been complied with, has burden to prove such fact, since officer's certificate in due form is prima facie evidence that purpose has been accomplished.

**5. Deeds ☞206—Evidence held to warrant implied finding of performance of mutual understanding to execute deed (Rev. St. 1925, art. 2190.)**

In suit to have deed canceled, evidence *held* to warrant finding by court, involved in judgment rendered, under Rev. St. 1925, art. 2190, that parties executed deed in conformity to mutual understanding, which agreement and performance thereof constituted sufficient consideration.

**6. Deeds ☞17(1)—Mutual agreement to convey and performance thereof was sufficient consideration for deed.**

Mutual understanding of parties to execute deed, and performance thereof *held* to constitute sufficient consideration for such deed.

Appeal from District Court, Lamar County; Newman Phillips, Judge.

Suit by Mrs. Mattie Ellington and husband against Mrs. Cornelia Bryant and husband. Judgment for defendants, and plaintiffs appeal. Affirmed.

This suit by appellants Mattie Ellington and her husband, E. O. Ellington, against appellees Mrs. Cornelia Bryant and her husband, Ira Bryant, was to cancel an instrument dated September 9, 1921, so far as it purported to be the deed of said appellants conveying the undivided interest of appellant Mattie Ellington in and to 80 acres of the D. K. Jamison survey in Lamar county. In their original petition filed December 7, 1925, appellants alleged that appellant Mattie Ellington was sick at the time she executed the instrument, and supposed it was for the purpose of effecting a partition between her and other persons owning undivided interests in the land. They alleged further that there was no consideration to them for the conveyance; and, further, that appellant Mattie Ellington was a married woman at

the time she executed the instrument, and that the certificate of the officer who took her acknowledgment to same was false, in that said officer did not explain the instrument to her separate and apart from her husband, as he certified he did, and in that she did not declare to said officer she had willingly signed the instrument, and did not wish to retract it, as he further certified she did. During her lifetime, and when she died in July, 1921, the land in controversy belonged to Mrs. Belle Joyce, who was the wife of M. L. Joyce, sister of appellant Mattie Ellington, and aunt of appellee Cornelia Bryant. Before and at the time appellants executed the deed they sought to cancel they resided in Oklahoma, and before and at the time Mrs. Joyce died she and her husband and appellee Cornelia Bryant and her husband resided in Texas; and, after the death of Mrs. Joyce, her husband and the Bryants continued to reside in Texas. In a supplemental petition filed March 2, 1926, appellants alleged that appellant Mattie Ellington was induced to sign said deed by fraud M. L. Joyce practiced on her when he visited appellants in Oklahoma a few days before September 1, 1921, when the deed was executed, in that said M. L. Joyce, after stating to said Mattie Ellington that he had control of his deceased wife's estate, and wished to partition same as soon as possible among those entitled to it, and after assuring said Mattie Ellington that Mrs. Joyce wished appellee Cornelia Bryant to have the land in controversy, and that he desired Mrs. Joyce's wish to be carried out, falsely represented to said Mattie Ellington that, if she would execute a deed conveying her interest in the land to said Cornelia Bryant, she (Mrs. Ellington) "would be (quoting) reimbursed or paid back for her interest in said land by other lands of the estate, which would be deeded to her by himself and the other heirs, and that he would proceed immediately to make partition of all the property among all the heirs." Appellees' answer to appellants' pleadings consisted of a general denial, pleas setting up the 3 and 4 year statutes of limitation as a bar to the suit, and a plea setting up matters which appellees alleged estopped appellants from asserting a right to the relief they sought. Appellants did not claim in either their pleadings or the testimony that the certificate of the notary public forming a part of the deed in question did not show that the requirements of the statute (article 6802 and 6805, Vernon's Statutes) with reference to acknowledgments of married women conveying property belonging to their separate estates was not complied with. Their contention was that recitals in said certificate showing such requirements to have been in all respects complied with were false. The deed in question purported to have been executed by "M. L. Joyce, surviving husband of Mrs. Belle Joyce, deceased, H. B. Harrall, L. H. Harrall, J. R. Harrall,

and R. D. Harrall, brothers of Mrs. Belle Joyce, deceased, Mrs. Mattie Ellington, sister of Mrs. Belle Joyce, deceased, joined by her husband, E. O. Ellington, Cornelia Boothe, sister of Mrs. Belle Joyce, deceased, joined by her husband, W. T. Boothe, William Harrall, James Harrall, Leonard Harrall, Mary Webb, a widow, the only children of Judson Harrall, deceased, who was a brother of Mrs. Belle Joyce, deceased, and being all and the only heirs of Mrs. Belle Joyce, for a valuable consideration, and for the purpose of carrying out the expressed wish of Mrs. Belle Joyce, deceased."

It appeared from testimony heard at the trial that, at the death of her mother, appellee Cornelia Bryant, then about 20 months old, began living with Mrs. Joyce, and continued living with her until she (Cornelia) was about 18 years old, when she married. Repeatedly during her lifetime, and within 2 or 3 weeks before she died, Mrs. Joyce declared that at her death she wished Cornelia to have the land in controversy. Testifying as a witness in her own behalf, appellee Mattie Ellington said that a few days after Mrs. Joyce died M. L. Joyce came to her (Mrs. Ellington's) home, and told her and her husband "that his wife had made the request that Cornelia Bryant should have this 80 acres of land, and he further told us that he was making every effort to carry out the wishes of his wife. He asked Mr. Ellington and I if we would be willing with the other heirs to sign the deed to Cornelia to this 80 acres of land, and we told him we would. Mr. Joyce did not have the deed with him at the time. We received it through the mails afterwards. I did not read the deed, and I don't think Mr. Ellington read it to me. I knew that Mr. Joyce was to have the deed prepared and send it to us, and I knew what was in it. I did understand that the deed was to be sent to us for our signatures and then forwarded to Durant to my brother Leonard Harrall, and he was to sign it (and) forward it to Denison. * * * I knew what the deed was. I knew that all the heirs were named in the body of the deed. I looked over the list of names. That's all I did look over. I counted the names."

Testifying further, said appellant Mattie Ellington said, and her testimony was corroborated by that of her husband and that of their witness Mrs. G. D. Ayres, that the officer who took her acknowledgment did not examine her "privily and apart from her husband"; did not "explain the instrument to her"; did not ask her if she acknowledged the instrument to be her act and deed; and did not ask her if she "had willingly signed the same for the purposes and consideration therein expressed," and if she "then wished not to retract it." Said appellant Mattie Ellington testified further that none of the other heirs of Mrs. Joyce who were to execute (and afterwards did execute the instrument)

had signed same at the time she and her husband signed it; that the deed was received by her and her husband through the mails the day before they signed same; that the officer who took their acknowledgment was chosen by them; that no one was present when he took same, except appellants, the officer, and said Mrs. Ayres; that, after she (Mrs. Ellington) and her husband executed the instrument, her husband sent same by mail to her brother at Durant; and that she knew the instrument was to be sent from one to another of the heirs until all had signed it, when it was to be "turned over to Cornelia." It appeared from the testimony of other witnesses in the case that, when the deed to appellee Cornelia Bryant was delivered to her, she at once took possession of the 80 acres of land, and thereafter cultivated and used it. On findings of the jury that the officer who took Mrs. Ellington's acknowledgment to the deed in question fully explained same to her, and that she signed the same "willingly, for the purpose and consideration expressed in it and that she did not wish to retract it," and "the evidence in the cause," the court rendered judgment that appellants take nothing by their suit and in appellees' favor for costs.

Wright & Baldwin, of Paris, for appellants.
A. P. Park, of Paris, for appellees.

WILLSON, C. J. (after stating the facts as above). [1] In Deaton v. Rush, 113 Tex. 176, 252 S. W. 1025, it was held that a suit by the maker of a deed to cancel it was not a suit to recover the land the deed conveyed, and therefore that the statute of limitations applicable to such a suit was the one (article 5690, Vernon's Statutes) declaring that "every action other than for the recovery of real estate, for which no limitation is otherwise prescribed, shall be brought within four years next after the right to bring the same shall have accrued and not afterward."

In the same case it was held that, if the cause of action was in favor of a married woman, the operation of the statute just referred to was suspended by force of another statute, to wit, article 5708, Vernon's Statutes, declaring that the time during which a woman is married "shall not be deemed a portion of the time limited for the commencement of the action." And in the same case it was held further that a cause of action to recover land did not arise in favor of a married woman who had conveyed it by a deed until after she had obtained a cancellation of such deed.

[2] It follows from the rulings made as stated that the judgment in appellees' favor cannot be supported on any findings the trial court could have made on the theory that either the 4 or 3 year statute of limitations applied in the case. Therefore, if the judgment is sustained, it must be because it did not appear that appellants were entitled to have the deed canceled on the ground that the officer taking her acknowledgment did not comply with the requirements of the law.

By the terms of the statute (articles 1114 and 6802, Vernon's Statutes), a conveyance by a married woman of land belonging to her separate estate does not take effect until on an examination "privily and apart from her husband" it has been fully explained to her by an officer authorized to take her acknowledgment, and she has acknowledged to the officer that "the same (quoting) is her act and deed, and that she has willingly signed the same, and that she wishes not to retract it." "It is the acknowledgment," said Judge Stayton in Waltee v. Weaver, 57 Tex. 569, "and not the signature, which passes the title in a conveyance by a married woman."

From recitals in the certificate of the officer who took Mrs. Ellington's acknowledgment to the deed in question here it appeared that all the requirements of the statute above referred to were complied with. Hence the deed on its face was sufficient to pass to Mrs. Bryant the title of Mrs. Ellington to the undivided interest she owned in the land.

Appellants' contention was and is, as hereinbefore stated, that the recitals admittedly sufficient, if true, to show a compliance with the requirements of the statute, were in fact false—that the officer did not examine Mrs. Ellington privily and apart from her husband, and did not explain the instrument to her, and that she did not acknowledge to him that the instrument was her act and deed and that she had willingly signed it and wished not to retract it.

Appellees, on the other hand, insist there was an absence of testimony tending to show fraud or imposition of any kind practiced upon Mrs. Ellington to induce her to execute the deed, and, therefore, that the recitals in the officer's certificate conclusively established as a fact that in taking her acknowledgment the officer complied with all the requirements of the law.

We agree there was no testimony showing fraud to have been practiced upon Mrs. Ellington. It appeared from her own testimony as a witness that she was fully informed as to the purpose and effect of the deed she executed, and that, in explaining it to her, the officer who took her acknowledgment could not have told her anything she did not already know about the transaction; and we think there is no reason to doubt from her testimony that, with such knowledge, she willingly signed the instrument, and desired it to be effective as her deed. We think it is apparent from her testimony that she relied for the relief she sought solely upon the fact (as testified to by her, her husband, and Mrs. Ayres) that the officer who took her acknowledgment failed to perform the duty the statute imposed upon him.

[3] The rule is, in the absence of fraud or mistake, that the officer's certificate is conclusive of matters stated therein as facts as

against a married woman who appeared before him for the purpose of acknowledging the execution of a deed conveying land belonging to her separate estate. Herring v. White, 6 Tex. Civ. App. 249, 25 S. W. 1016. If there is an exception to the rule, it is in a case like Stewart v. Miller (Tex. Civ. App.) 271 S. W. 311, where the deed of the married woman was without a consideration sufficient in law to support it.

In the case cited authorities pertinent to the question were discussed by Chief Justice Gallagher, who, in concluding the discussion, said the grantee in such a deed, though not a participant in fraud, practiced on the married woman grantor, "should not, * * * be entitled to deny the right of the grantor or her heirs to impeach the truth of the material recitals of such certificate, unless he shows some equitable ground growing out of some action in good faith on his part in reliance upon such conveyance; such, for instance, as actual occupancy of the property and valuable improvements thereon."

A difference between that case and this one lies in the fact that in that one it did not conclusively appear, as it did in this one, that the married woman fully understood the transaction she engaged in and willingly signed and delivered the deed with the desire that it should operate as a conveyance of her interest in the land.

We think the difference is a material one, and that relief by cancellation ought not to be granted to a married woman on the ground that the officer who took her acknowledgment did not comply with the requirements of the law, when she is in the attitude of saying, in effect, if the officer had fully discharged his duty in taking her acknowledgment, she nevertheless would have acted as she did in the matter.

[4] The purpose of the statute is to protect the wife in the exercise of her right to freely dispose of her lands, and the officer's certificate, when in due form, is prima facie evidence that the purpose had been accomplished. The burden of proof is on the married woman to show to the contrary; and we think she does not do so when she not only fails to show that the failure of the officer resulted in her executing the deed when otherwise she would not have executed it, but shows, instead, that she would have executed the deed as she did had there been no such failure. Ward v. Baker (Tex. Civ. App.) 135 S. W. 620. In the case just cited the court said:

"The evidence tended to show that Mrs. Baker was fully acquainted with the recitals in the deed and the terms of the notes, but under the instruction [of the court] the deed would be invalidated, if not fully explained by the officer, although she had full knowledge of it from other sources. That proposition could not be sustained, for the reason that the failure to explain could not invalidate the deed unless a fraud was perpetrated upon Mrs. Baker, and a fraud could not be perpetrated if she knew all that could have been told her by the officer."

In Stewart v. Miller, referred to above, the only consideration for the married woman's deed was love and affection she had for the grantees. We are inclined to think that case also differs from this one, in that in this one there was a consideration the law recognizes as sufficient in the mutual undertakings of the heirs of Mrs. Joyce, including Mrs. Ellington, to join each other in the execution of a deed conveying the land to Mrs. Bryant. M. L. Joyce, testifying about the visit he made to appellants in Oklahoma, said:

"I told them I came up to see if they would sign the deed; we had had trouble with Mrs. Ellington before when Mrs. Harrall (Mrs. Ellington's mother) died—I told them I did not want the deed drawn up if they would not sign it, and they said for me to bring it up and they would sign it. Mrs. Ellington said that everybody knew Cornelia (Mrs. Bryant) was to have this land from the time she came to Mrs. Harrall's house."

Mrs. Ellington, testifying in her own behalf, said M. L. Joyce did not have the deed he wished her and her husband to execute with him at the time he visited them; that he declared he was making an effort to have Mrs. Joyce's wishes as to the land in controversy carried out; and that the purpose of his visit was to ascertain if she and her husband would join the other heirs in a deed conveying the land to Mrs. Bryant; that the deed was sent to her and her husband for their signatures before it was sent to any of the other heirs; and that, when she and her husband, after executing the instrument, sent it to another one of the heirs, it was because she understood it was "to be sent around and signed by the others." Mrs. Ellington's husband, testifying as a witness, said:

"I did not want to sign the deed, but I did sign it, because I knew if I did not the whole family would jump on me. I knew they sent me one to sign once and I failed to do it, and three or four days afterwards they sued me, and for that reason I signed this one. After the deed was signed, I sent it to Mr. Harrall, at Durant. I did that at the request of Mr. Joyce. I did not write Mr. Harrall what to do with the deed. He already knew that."

[5, 6] We think the testimony set out above, together with that referred to but not set out, warranted a finding by the court, involved in the judgment rendered (article 2190, Revised Statutes 1925), that the parties who executed the deed, including Mrs. Ellington, did so in conformity to a mutual understanding and agreement between them, and that such agreement and performance thereof by the parties thereto constituted a sufficient consideration within the doctrine which upholds voluntary subscriptions as valid on the ground that "one gratuitous subscription is

the consideration for the other." 1 Elliott on Contracts, § 229; 25 R. C. L. 1400; Scott v. Trigg, 76 Ind. App. 69, 131 N. E. 415.

The judgment is affirmed.