**KIMMELL et al. v. TIPTON et al.**

No. 2025.

Court of Civil Appeals of Texas. Eastland.

May 31, 1940.

Rehearing Denied June 28, 1940.

Jack W. Frost, of Eastland, for appellants.

Blanton & Blanton, of Albany, by Thomas L. Blanton, Sr., for appellees.

GRISSOM, Justice.

Plaintiffs, Carrie Ella Tipton, joined pro forma by her husband, A. P. Tipton, by their third amended original petition, filed March 15, 1939, in lieu of their petitions theretofore filed in causes 16,779, 17,066, and 17,303, which causes had been consolidated under number 17,303, complained of Fannie J. Kimmell and her husband, Sam Kimmell, Josephine Tipton Latson and her husband, J. H. Latson, Jr., and the Tiptons' minor children, Chesley, Hervey, Elbert and Leonard Tipton. Plaintiffs alleged that prior to the 12th day of January, 1931, Carrie Ella Tipton owned a certain section of land in Eastland County; that when Mrs. Tipton was a child she had convulsions; that she had pneumonia three times, and was sickly, and continued to be in bad health after her marriage; that she was troubled and apprehensive about a prospective serious operation; "that she then was greatly worried and was not possessed of sufficient will-power to resist and refuse to comply with the wishes and demands made upon her by her father, and on January 12, 1931, upon the demand of her father, she was compelled through their importunities, and her inability to resist their demands, to sign a trust deed which said C. J. O'Connor had prepared, conveying to her said father, John E. Chesley, as trustee, for her minor children, defendants herein, the aforesaid section of land * * * in trust for the use and benefit of her said minor children."

That there was no consideration for said deed; that plaintiffs were "informed that the purpose of said deed was to protect plaintiffs' said section of land * * * from being subjected to the payment of the notes they had given for the land near Scranton"; that the acknowledgment of Mrs. Tipton was not taken separately and apart from her husband, as stated in the acknowledgment to said deed; that John E. Chesley took possession of said land under said deed on January 12, 1931, and managed and controlled it until he died on January 25, 1932; that on September 13, 1932, an attempt was made to appoint Mrs. Kimmell (then Mrs. Pulley) as substitute trustee to take charge of said land; that John I. Chesley, Vida O'Connor, Fannie J. Pulley and C. J. O'Connor signed a document dated the 13th day of September, 1932, purporting to appoint said Fannie J. Pulley substitute trustee; that said instrument was acknowledged by said parties and recorded in the deed records of Eastland County; that said appointment of Mrs. Kimmell as substitute trustee was void and should be set aside and annulled because (1) said parties had no authority in law to appoint a substitute trustee; (2) the trust deed of January 12, 1931 (wherein Mrs. Tipton conveyed said property in trust to her father) was void and should be set aside and annulled because "at the time it was signed, the said Carrie Ella Tipton on January 12, 1931, did not possess sufficient mental capacity under the law to execute a lawful deed of conveyance, and she then was incapacitated from executing a lawful deed of conveyance; that said fact was then known to the parties who attempted to appoint Mrs. Kimmell as substitute trustee"; (3) that said trust deed was void because Mrs. Tipton's acknowledgment was not taken separately and apart from her husband; (4) that said trust deed, if valid, did not authorize the appointment of a substitute trustee under the circumstances that existed at the time of the appointment of Mrs. Kimmell; (5) that no authority was given to C. J. O'Connor to participate in the appointment of a substitute trustee; (6) that Mrs. Kimmell did not have the right to vote to appoint herself substitute trustee; (7) that Mrs. Kimmell did not have the right to approve her own bond.

Plaintiffs further alleged that on March 29, 1933, Mrs. Tipton's brother, John I. Chesley, made an affidavit charging her with being of unsound mind; that she was arrested, tried and, on April 25, 1933, adjudged to be of unsound mind, and a guardian appointed for her person and estate; that on April 6, 1936 Mrs. Tipton was adjudged to be of sound mind.

Plaintiffs further alleged that if said trust deed and the appointment of Mrs. Kimmell as substitute trustee both should be held to be valid, then Mrs. Kimmell should be removed (a) because she had forfeited her rights to act as such trustee, by failing to make a report of the condition of said estate on plaintiffs' request, and (b) because she was not a suitable person to act as such trustee, being unfriendly to plaintiffs and their minor children; that the trust deed was void and should be set aside and annulled because on January 12, 1931, "when same was signed, the said Carrie Ella Tipton was of unsound mind and did not possess sufficient mental capacity to legally execute a deed of conveyance."

Plaintiffs further sought to recover from Mrs. Kimmell $1,200, rents and revenues Mrs. Kimmell was alleged to have collected from said estate, and to have withheld from plaintiffs, and $7,000 damages for failure to lease said section of land for oil and gas development.

The pertinent provisions of the trust deed from Mrs. Tipton to her father are as follows:

"That we, Carrie Ella Tipton, joined pro forma by her husband, A. P. Tipton, for and in consideration of the sum of Ten Dollars, and of the love and affection which we have for our children, including those living and those who may hereafter be born, have bargained, sold and conveyed, and by these present do bargain, sell and convey unto John E. Chesley, trustee, * * * for the sole use and benefit of said children, * * * (Then follows a description of the property.)

"To have and to hold the above described property unto the said John E. Chesley, trustee, and his successor, as hereinafter appointed, together with all and singular, the rights and appurtenances, thereto in any wise belonging and we do hereby bind ourselves, our heirs to warrant and forever defend, all and singular the said premises unto the said John E. Chesley and his successors, against every person whomsoever lawfully claiming or to claim the same, or any part thereof, for the purposes hereinafter mentioned:

"But should the said John E. Chesley fail or refuse to accept the said property

under the terms of this trust, or should he be prevented from accepting same because of death or his condition of health, then the title to the above described property shall pass to and vest in such person as may be designated and agreed upon by the majority of the following named persons to-wit: Carrie E. Tipton, Vida M. O'Connor, Fannie J. Pulley, John I. Chesley and Bernie McCrea, if all of said persons *or* living, but if they are not, then by a * * * majority of those living at the time of such designation or appointment. Such appointment or designation of a substitute trustee hereunder by a majority of the above named persons shall be in writing and duly signed and acknowledged by each of said persons and filed for record in the office of the County Clerk of Eastland County, Texas, after which time the said substitute trustee shall become vested with the title to the above described property, with full power and authority to manage and control the same as hereinafter set forth for the purpose hereinafter mentioned:

"The purpose of this instrument is to create a trust and to convey the above described property to a trustee to be managed and controlled by said trustee for the sole use and benefit of all of the children of the said Carrie E. Tipton, or heirs of her body, and shall exist and be in full force and effect, and be held by said trustee or substitute trustee until the youngest of her said children shall have reached the age of twenty one years, and when the youngest of her said children shall have reached the age of twenty one years, then the above described property and the title thereto, shall become vested in each of the said children of the said Carrie E. Tipton, share and share alike, and shall be owned by them in fee simple.

"The said John E. Chesley, or his successors as trustee shall have full power and authority to manage and control the above property, including the right to lease the same for the purpose of having the same explored for oil or gas or other minerals, and under such terms as the said trustee or substitute trustee may see fit, and also the right to sell, mortgage or dispose of all of said property, or any part thereof, as the said trustee or substitute trustee may see fit for the benefit of the said children, and under such terms as the said trustee shall think fit and proper. And the said trustee or substitute trustee as named herein shall have the right to receive all rents, revenues, profits or any other income whatsoever from the said property, and all royalties, if any, received from any of the leases executed by him covering the said property, and such trustee or substitute trustee shall have the right to use, disburse * * * and pay out any or all of the rents, revenues or other income from such property, to any person, or persons, or in any way, that said trustee shall think to be to the best interest of all of said children, during the entire life of this trust."

The instrument thereafter provided that upon demand of any person interested in the welfare of the children "who are beneficiaries hereunder" the trustee, or substitute trustee, should make a written report showing the true condition of the estate; that not more than one report should be required in any one year; that if such trustee should fail to make such report, when so demanded, he should forfeit his right to act as trustee. The deed was signed and acknowledged by the plaintiffs.

The instrument appointing Mrs. Kimmell (then Mrs. Pulley), as substitute trustee, on the 13th day of September, 1932, was signed and acknowledged by John I. Chesley, Vida M. O'Connor and Fannie J. Pulley, with Mrs. O'Connor being joined therein by her husband.

The instrument appointing the substitute trustee recited the conveyance of the section of land by the plaintiffs to John E. Chesley, trustee; that John E. Chesley accepted the appointment, took charge of said property and held same as trustee until his death on the 25th day of January, 1932. It further recited:

"And, whereas, said trust deed provides that in case of the death of the said John E. Chesley, a majority of the following named persons, to-wit: Carrie E. Tipton, Vida M. O'Connor, Fannie F. Pulley, John I. Chesley and Bernie McCrea; shall designate and appoint a successor to the said John E. Chesley; and that the title to the above described property should pass to and vest in the said successor so appointed or designated:

"And, whereas, all of the above named persons were given notice, in person, to attend a meeting held for the purpose of electing, appointing or designating a successor to the said John E. Chesley to receive and have the title and possession

of the said property as trustee, for the purpose mentioned in said original deed of conveyance; and said meeting was held in the City of Cisco, Eastland County, Texas, on this date; and it was agreed by a majority of those present that Fannie J. Pulley should be appointed, elected and designated successor to the said John E. Chesley;

"Now, Therefore, we, the undersigned, being a majority of those named in the original deed above described, have and by these presents do elect, designate and appoint Fannie J. Pulley of the County of Eastland and State of Texas, as successor to the said John E. Chesley, deceased, and as substitute trustee under said original deed of trust or conveyance, and with full power and authority to do any and all things provided in said original deed which the said John E. Chesley could have done."

It further provided that Mrs. Kimmell should execute a bond in the sum of $500. Said bond was executed and it was approved by the parties who appointed Mrs. Kimmell substitute trustee.

The minor defendants, acting through their duly appointed guardian ad litem, Hon. Jack W. Frost, filed their first amended original answer, which consisted, among other things, of a general demurrer, special exceptions and general denial. They further pleaded that plaintiffs' cause of action was barred by the four years' statute of limitation.

The cause was submitted to a jury on special issues and the jury found (1) that on January 12, 1931, at the time plaintiffs executed the trust deed to John E. Chesley, Mrs. Tipton was not capable of understanding the nature and effect of such instrument; (2) that Mrs. Tipton continued under such disability from "1930 until April 6, 1936"; (3) that the acknowledgment of Mrs. Tipton to the trust deed was taken in the presence and hearing of her husband; (4) that the execution of the trust deed by Mrs. Tipton was not procured by undue influence; (5) that the execution of the trust deed was not obtained by duress; (6) that Mrs. Kimmell could not have leased the "mineral ·rights to the land * * for a cash bonus and an annual rental"; (8) that Mrs. Kimmell did not fail to furnish a report showing the true condition of the trust estate; (9) that Mrs. Kimmell had the proper regard and consideration for the interest and welfare of the minors.

Judgment was rendered on said verdict that Mrs. Tipton recover the title to and possession of the section of land as her separate property and estate; that the trust deed to John E. Chesley be canceled; that the appointment of Mrs. Kimmell as substitute trustee be annulled; that Mrs. Tipton's title to said section of land be cleared and freed from all claims of the defendants, and she be granted her writ of possession. The judgment provided that plaintiffs take nothing on their claim for damages against Mrs. Kimmell. (Other provisions of the judgment are not here deemed material.) From said judgment, the minor defendants alone have appealed.

Appellants' first assignment of error is "The court erred in overruling the motion of the minor defendants for an instructed verdict, timely presented before the court's charge was read to the jury." Some of appellants' propositions thereunder are, in substance, (1) This being a suit to set aside a deed because of mental incapacity of Mrs. Tipton, and Mrs. Tipton having testified to the effect that she understood the nature and effect of the deed, such testimony was conclusive against her, and the trial court should have instructed a verdict for appellants; (2) plaintiffs' witnesses having testified that Mrs. Tipton understood the nature and effect of the trust deed, such testimony concluded her rights in the premises, and the court should have instructed a verdict for appellants; (3) plaintiff having admitted her mental capacity at the time she executed the trust deed, and more than four years having elapsed since its execution prior to the institution of this suit, the court should have directed a verdict for appellants on their plea of the four years' statute of limitation; (4) plaintiff having failed to offer any proof on the question of mental incapacity at the time of the execution of the trust deed abandoned such issue, and the other alleged grounds for cancellation, namely, duress, undue influence and defective acknowledgment, being precluded by the four years' statute of limitation, the court should have directed a verdict for appellants; (6) no fraud, duress or undue influence having been pleaded or proved by plaintiffs, the certificate of the notary to the trust deed was conclusive of the facts therein stated.

■ Appellants' second assignment of error is: "The court erred in overruling the motion of the minor defendants for a judgment non obstante veredicto, timely

considered after due notice given." The reasons assigned, in the propositions under this assignment, why the court erred in said action are, in the main, substantially the same as under the first assignment. Said assignments are attacked by appellees principally on the ground that they fail to state the reason such action of the court is deemed erroneous. There are many cases that support appellees' contention; however, this court and the Supreme Court have held that such reason is not a requisite of an assignment of error. We are of the opinion that said assignments are sufficient. Clarendon Land Co. v. McClelland, 86 Tex. 179, 23 S.W. 1100, 22 L.R.A. 105; First National Bank v. Fuller, Tex.Civ.App., 191 S.W. 830, writ refused; 3 Tex.Jur. 847; Thraves v. Hooser, Tex.Com.App., 44 S.W.2d 916; Hardwicke v. Trinity Universal Ins. Co., Tex.Civ. App., 89 S.W.2d 500; Art. 1844, R.S.1936; Panhandle & S. F. Ry. Co. v. Burt, Tex. Civ.App., 71 S.W.2d 390; Stillman v. Hirsch, 128 Tex. 359, 99 S.W.2d 270; Brackenridge v. Claridge, 91 Tex. 527, 44 S.W. 819, 43 L.R.A. 593; Fuqua v. Pabst Brewing Co., 90 Tex 298, 38 S.W. 29, 35 L.R.A. 241.

We call attention to the following testimony of Mrs. Tipton with reference to her allegation and the jury's finding that at the time she executed the deed she was not capable of understanding its nature and effect.

"Q. Mrs. Tipton, if you had known that your father was not going to hold that deed temporarily I want you to state to the jury whether or not you would have signed it? * * * A. No.

"Q. Mrs. Tipton, if it had not been for what Mr. C. J. O'Connor told you and what your father, Mr. John E. Chesley, told you; tell the jury whether you would have signed that trust deed? A. No sir, I would not have signed it and I would have the land right now and would have had it leased by now, too, but it's not leased now. * * * A. I talked to Daddy about it, or he talked to me about it rather, him and O'Connor.

"Q. They had talked to you about making that trust deed before that day? A. Him and O'Connor had.

"Q. They both had talked to you about making this deed before that day? A. I think they did.

"Q. Do you know whether they did or not; whether they had talked to you about making this trust deed before that day or not? * * * A. I told you I don't know.

"Q. While you were living at Moran, where did you live? A. Where did I live?

"Q. Yes? A. I lived in town.

"Q. Did you have a house in town? A. Why certainly.

"Q. At that time, did you run your household affairs and cook for your children and family? A. I did, but listen I had lived at Moran at different times; the first time I lived there I had some help.

"Q. I am talking about the time you were living there when you signed that deed. A. I did at the time when you are talking about.

"Q. You cooked the meals and took care of your household affairs yourself? A. I did.

"Q. And you bought groceries for your family? A. That is what I am doing now.

"Q. And went about all the regular duties that any woman keeping house would do? A. Sure, I always do.

"Q. Did you have a car at that time? A. Yes, a Model A Ford.

"Q. And you drove your car around town and back and forth to Cisco? A. Certainly, when I got ready I did.

"Q. Now, *when you executed this trust deed, Mrs. Tipton, you understood you were conveying this 640 acres of land to your father in trust for your children?* A. *Yes,* but I wouldn't have done that if O'Connor hadn't butted in and been after me and told me I would lose both places and if O'Connor hadn't done daddy that way—

"Q. I understand— A. I thought you would.

"Q. *You understood that you were conveying it to your father in trust for your children?* A. *Yes,* but I never did want to; I had to, I thought. Listen, what was mine is mine and I have as much right to it as they have to theirs.

"Q. I am not asking why you did it, I am— A. Well, I'm telling you; I think I have as much right to my stuff as you have to yours or O'Connor or Mrs. Kimmell have to theirs and I wouldn't take a dime that didn't belong to me, but they just glory in getting something that don't belong to them.

"Q. I understand all that; but *you did understand the purpose and nature of that trust deed—* \* \* \*

"Q. *You did understand, Mrs. Tipton, when you signed the trust deed, you were conveying the 640 acres, Section 471, to your father in trust for your children?* A. *Yes,* after I was forced to do it; I have sense enough to know it.

"Q. Please just answer my question, Mrs. Tipton— A. That's what I am doing.

"Q. *Mr. O'Connor explained to you what it was for?* A. *Yes,* and if it hadn't been for him it wouldn't have happened.

"Q. But *he did explain it to you?* A. *I said he did.* \* \* \*

"Q. What did he tell you? A. He just told me that if I didn't sign it Ezzell would sue and take both places.

"Q. What did he tell you about the effect of the deed? A. I don't know.

"Q. Do you remember whether he told you what you were doing? A. He said I was deeding it to the children. \* \* \*

"Q. Is it a fact, Mrs. Tipton, the real reason you are bringing this suit is that you are not satisfied with anyone being the trustee other than yourself? A. I think I should have it, it is mine.

"Q. That is the real reason for this lawsuit, isn't it, Mrs. Tipton? A. How would you like for anyone to do you that way.

"Q. On September 13, 1932, Mrs. Tipton, at the time you say all of the family met at Mrs. Chesley's house, at the time when Mrs. Kimmell was selected as trustee; you knew at that time, did you not, that you had executed this trust deed about a year and a half before that to your father as trustee for your children? A. Sure I knew it.

"Q. And you knew at that time that the deed gave the legal title to that property to a trustee for your children, didn't you? A. No, I don't know that I did.

"Q. You knew you had conveyed it to your father as trustee for your children? A. I knew Daddy was trustee and he treated me right and fair.

"Q. You knew you had conveyed it to your father as trustee, didn't you? A. I told you I did. \* \* \*

"Q. You made this trust deed, the one you are seeking here to set aside, you transferred this 640 acres to your children, or to your father in trust for the children?

A. We made that after we bought that place, yes.

"Q. And before the deed or rescission or cancellation was made? A. I reckon so, but I couldn't tell you for sure, I am telling you just what I know about it.

"Q. What was the purpose of executing the trust deed? A. What was the purpose?

"Q. Yes, did you want to turn it over to your father for the benefit of the children? A. I tell you Daddy told me; he said 'O'Connor has advised that you deed it to me because Ezzell might come in and sue and you will lose both places', and if it hadn't been for that we would have been all right.

"Q. And your father made that explanation to you? A. What do you want to lay it all on to Daddy for?

"Q. Well, let's lay it on to O'Connor then? A. That will suit better. \* \* \*

"Q. You understood that if you executed that trust deed and appointed your father trustee for the benefit of your children, then if the Garretts or the Ezzells sued you and drew on that trade, they could not come in and take this property away from your children? A. I suppose that was their idea.

"Q. That was your understanding and the reason you signed the deed; is that right? A. I didn't want to lose my section of land, it was mine and I didn't want to lose it.

"Q. That was the purpose then of deeding it to your children; that is what you had in mind at that time? A. I guess it was, I don't know what I had in mind; but if you want it that way, all right.

"Q. It is not what I want, Mrs. Tipton. A. It seems to be, you want it your way.

"Q. I beg your pardon. A. I beg yours too.

"Q. I want to know what you had in mind at the time you made that deed? A. I have told you all I know about it."

Mr. Tipton testified:

"Q. You testified, I believe, that when Mr. O'Connor took your acknowledgments, he asked you if you understood it, is that right? A. Yes sir.

"Q. And you said, of course, you did understand it? A. Yes sir.

"Q. You understood what you were doing? A. Yes sir, I was signing away all the right I had.

"Q. And your wife understood what she was doing? A. I don't know what she knew.

"Q. Did she ever tell you what she did? A. *She realized what it would mean before she ever signed it.*

"Q. *She understood then she was deeding this property in trust for her children?* A. *Yes sir.* * * *

"Q. *What I am asking is: whether or not Mrs. Tipton ever told you that she understood* [what] *was in that deed?* A. *She told Mr. O'Connor she understood it.* * * *

"Q. What did he say when he took your acknowledgments? A. Well, I don't know whether I can word it or not.

"Q. What do you remember him saying? A. I remember he asked did we both understand what we were signing.

"Q. What did you say to him? A. We told him we did."

Mrs. McCrea, plaintiffs' witness, and sister of Mrs. Tipton, testified:

"Q. When Carrie made this trust deed, did she know what she was doing? A. Do you know why she did that?

"Q. Just answer my question, please, Mrs. McCrea— A. The reason she did that was because Tipton had left her and she agreed with her Daddy to deed it to her children to protect it for them.

"Q. She knew what she was going to do at the time? A. Yes. * * *

"Q. Well, lady,—I don't know what you think about that; but *at the time your sister Carrie executed this trust deed to your father, was she crazy, or did she have her right mind? Was she sane or insane?* A. *She was sane, of course she was sane.*

"Q. And *you think that she has always been sane?* A. I certainly do."

Mr. McCrea, plaintiffs' witness, testified:

"Q. Yancey, I will direct your attention back in 1930; tell the jury whether or not Mrs. Carrie Ella Tipton was ill during the year 1930, and whether or not she had to go to a hospital? A. Yes sir, she had an operation that year.

"Q. Yancey, at that time I wish you would tell the jury just exactly what Mrs. Carrie Ella Tipton's condition was then and after she got out of the hospital; just what effect it had on her mental condition, that sickness and everything, just what you observed? * * . *

"Q. What did you observe as to her condition? A. All I could tell about it, it was at first just like anyone that had a long siege of sickness, she was weak physically.

"Q. *Was her mental condition impaired in any way?* A. *I wouldn't think so.*"

Mrs. Chesley, Mrs. Tipton's step-mother and a witness for plaintiffs, testified:

"Q. You have been asked about a trust deed that Carrie executed, did you know about that? A. Yes sir.

"Q. Did you know Carrie at that time and were you visiting with her or she visiting with you, and did you know about the circumstances of her executing that instrument? A. Yes, it was at my home that it happened—well I beg your pardon, which instrument do you mean, the deed to this section of land?

"Q. Yes, this section of land in controversy. A. Yes, that was in my home.

"Q. Well, I will ask you this question, Mrs. Chesley, state whether or not, in your opinion, *at the time Carrie executed that trust deed, did she have sufficient mental capacity and understanding to know and understand what she was doing and the nature of the instrument she was signing?* A. *She had a very good understanding always.*

"Q. *At that time, when she signed that trust deed, did she have understanding sufficient to know the nature of the instrument she was signing, when she signed this trust deed to your husband?* A. *Yes sir, she knew what she was doing and she did it as a matter of policy.* .

"Q. *Did she understand the transaction she was making?* A. *Yes sir.*

"Q. Do you think so, Mrs. Chesley? A. Yes sir."

In Southern Surety Co. v. Inabnit, 1 S.W.2d 412, 415, this court, in an opinion by Judge Hickman, stated the rule with reference to the testimony of and admissions by a party to a suit as follows: "*The testimony of a party to a suit* and admissions made by him *must be construed as binding upon him, and not merely as raising issues of fact.* His testimony is governed by different rules to those governing witnesses who are not parties. Mhoon v. Cain, 77 Tex. 316, 14 S.W. 24; Nerio v. Christen (Tex.Civ.App.) 189 S.W. 1038; Smith v. [Boston Elevated] Ry. Co. [1 Cir.] 184 F. 387, 37 L.R.A. (N.S.) 429;

Hubb-Diggs Co. v. Mitchell (Tex.Civ. App.) 256 S.W. 702."

In Daugherty v. Lady, Tex.Civ.App., 73 S.W. 837, 838, the court said: "Appellant pleaded in justification (1) the power expressly given by a mortgage on the cattle executed by appellee to him * * *. As to the first ground of justification, the appellant, by his own testimony, emphatically denied that such a mortgage was ever executed to him by the appellee. *His testimony as to this matter was directly contrary to what he had pleaded, and should have been taken as conclusive against him* * * *."

■ In J. R. Watkins Co. et al. v. King, Tex.Civ.App., 83 S.W.2d 405, 407, the applicable rule is stated by Chief Justice Gallagher, as follows: "The weight of the testimony given by a party to a suit as a witness therein is determined by a different rule from that applied in determining the weight to be given the testimony of other witnesses. *When a party testifies to positive and definite facts which, if true, would defeat his right to recover or con-*clusively show his liability, and such statements are not subsequently modified or explained by him so as to show that he was mistaken, although testifying in good faith, *it has generally been held that he is conclusively bound by his own testimony* and cannot successfully complain if he is nonsuited or the court directs a verdict against him. 17 Tex.Jur. pp. 577, 578, and authorities cited in notes 3 and 4; Mhoon v. Cain, 77 Tex. 316, 318, 14 S.W. 24; Southern Surety Co. v. Inabnit (Tex.Civ. App.) 1 S.W.(2d) 412, 415, par. 8; Stephenson v. Barrow (Tex.Com.App.) 15 S.W.(2d) 575, 576, 577; Nerio v. Christen (Tex.Civ. App.) 189 S.W. 1038, 1040 (second column); Smith v. Boston Elevated Ry. Co. [1 Cir.] 184 F. 387, 389, 37 L.R.A.(N.S.) 429; Broad River Lumber Co. v. Middleby [4 Cir.] 194 F. 817, 821, par. 3; Harlow v. Leclair, 82 N.H. 506, 136 A. 128, 50 A.L.R. 973, 976, 977, and note page 979 et seq. The testimony of appellee that the deed from his father to him covered all the lands his father owned at the time and that his father also turned over his cattle to him and thereafter had no property left, was in no way modified or explained by him so as to permit effective contradiction thereof by proof of isolated circumstances by other witnesses, as attempted by appellee in this case. No reason is shown why appellee should not, under the rule stated, be bound by his own affirmative testimony given in his oral deposition read in evidence in the case."

In Burguieres v. Farrell (Tex.Civ. App.) 85 S.W.2d 952, 972, the court said:

"It is a wholesome rule, and should assuredly be applied in suits in equity, that *the testimony given and admissions made by a party to a suit must be construed as binding upon him, and not merely sufficient to raise issues of fact.* His testimony should. be governed by rules that wholly differ from rules governing witnesses who are not parties. Nerio v. Christen et al., Tex.Civ.App., 189 S.W. 1038; Smith v. Boston Elevated Ry. Co. [1 Cir.] 184 F. 387, 37 L.R.A.(N.S.) 429, 431; Southern Surety Co. v. Inabnit (Tex. Civ.App.) 1 S.W.(2d) 412; 17 Tex.Jur. pp. 577, 578."

"Admissions made by a party while testifying as a witness are conclusive at the trial during which the testimony is given, and also on subsequent trials of the same case * * *." 17 Tex.Jur. 577, 578.

"The testimony of a party to a suit and admissions made by him therein are binding upon him. A party is also concluded by the testimony of a witness whom he has offered; by placing him upon the stand the party vouches for the witness' credibility, and the testimony elicited must be taken as true in considering the effect thereof upon the party's rights." 17 Tex. Jur. 928, 929.

Also, see Texas Pacific C. & O. Co. v. Bridges, Tex.Civ.App., 110 S.W.2d 1248, 1250; Bailey v. Hix, 49 Tex. 536, 541; Renn v. Samos, 33 Tex. 760, 767; Nerio v. Christen, Tex.Civ.App., 189 S.W. 1038, 1039; Smith v. Railroad Employees Development Co., Tex.Civ.App. 195 S.W. 220, writ refused; Old River Rice Irr. Co. v. Stubbs, Tex.Civ.App., 168 S.W. 28, 32; McMath v. Staten, Tex.Civ.App., 42 S.W.2d 649, 652; Thompson v. Moor, Tex. Com.App., 14 S.W.2d 803, 804; Pickett v. Dallas Trust & Sav. Bank, Tex.Com.App., 24 S.W.2d 354, 357; Texas Prudential Ins. Co. v. Padgett, Tex.Civ.App., 120 S. W.2d 927, 929; Foster v. Woodward, Tex. Civ.App., 134 S.W.2d 417, 420, writ refused; Wristen v. Wristen, Tex.Civ.App., 119 S.W.2d 1104, 1108; Trice v. Bridgewater, 125 Tex. 75, 81 S.W.2d 63, 67, 100 A.L.R. 1014; 20 Am.Jur. 1032.

■ If at the time the trust deed was executed by Mrs. Tipton she under-

stood the nature and effect of her act in executing it, she cannot cancel it on the ground of mental incapacity. Smith v. Thornhill, Tex.Com.App., 34 S.W.2d 803, 804; Wright v. Matthews, Tex.Civ.App., 130 S.W.2d 413; 14 Tex.Jur. 844; 24 Tex.Jur. 377. The testimony of Mrs. Tipton is definitely to the effect that she did understand the nature and effect of her act in executing the deed. Such also was the substance of the testimony of her witnesses set out above. Mrs. Tipton's testimony constituted a denial of her alleged mental incapacity at the time of the execution of the deed. In her testimony she assigns an entirely different reason (than mental incapacity) for executing the deed. She cannot recover on a ground alleged but definitely repudiated by her as a witness. The other grounds for cancellation alleged (other than lack of separate acknowledgment by Mrs. Tipton), to-wit, undue influence and duress, were found against her.

The jury found in answer to issue 3 that Mrs. Tipton's acknowledgment of the trust deed was taken in the presence and hearing of her husband. Plaintiffs' allegation relative thereto was, in substance, merely that her acknowledgment was not taken separately and apart from her husband, but was taken in the presence and hearing of her husband. The notary's certificate is in due form; it recites that Mrs. Tipton was "examined by me privily and apart from her husband * * *". The testimony relative thereto by the plaintiffs is that the acknowledgment of Mrs. Tipton was taken in the presence and hearing of her husband; the notary's testimony is directly to the contrary. They do agree that plaintiffs and the notary, in separate automobiles, drove from Eastland County into Stephens County for the purpose of taking plaintiffs' acknowledgments to the deed.

There was neither allegation nor proof "that any fraud or imposition was practiced on" Mrs. Tipton "to induce her to acknowledge the deed in question." Cockerell v. Griffith, Tex.Civ.App., 255 S.W. 490, 493.

█ We understand the established rule to be that when a grantor actually appears before a notary for the purpose of having his acknowledgment taken, and makes some sort of acknowledgment, the notary's certificate, if regular in form, is conclusive as to all matters required to be recited therein, except upon allegation and proof of fraud, duress, or imposition known to or participated in by the grantee; where the grantor has appeared before the notary for the purpose of having his acknowledgment taken, the notary's certificate cannot be impeached by simply disproving the truth of its recitals. People's Gas Co. v. Fletcher, 81 Kan. 76, 105 P. 34, 41 L.R.A.,N.S., 1161, 1163. The Supreme Court of Texas, in an opinion by Chief Justice Hemphill, in Hartley v. Frosh, 6 Tex. 208, 216, 55 Am.Dec. 772, relative to this question said: *"To impeach the veracity of the certificate, it will not be sufficient to allege that there was no privy examination—that she did not acknowledge the same to be her act and deed, &c. There must be some acts alleged showing fraud; as, for instance, that there was a fraudulent combination between the Notary and the parties interested. The certificate, in this case, is in conformity with the statute, and cannot be impeached merely by saying that she was not examined apart from her husband."*

The Commission of Appeals in Robertson v. Vernon, 12 S.W.2d 991, 993 (opinion by Justice Speer), said: "The rule of evidence established in the line of cases headed by Hartley v. Frosh, supra, is a wholesome one, and there is no intention here to depart from it or in any wise to qualify it * * *."

The Commission of Appeals in Ward v. Weaver, 34 S.W.2d 1093, 1095, (an opinion by Judge Harvey) said: "It is settled that, where a married woman appears before a notary for the purpose of acknowledging an instrument, the fact recitals of the notary's certificate of acknowledgment are conclusive, unless fraud or imposition is shown. Hartley v. Frosh, 6 Tex. 208, 55 Am.Dec. 772; Davis v. Kennedy, 58 Tex. 516."

In Ellington v. Bryant, Tex.Civ.App., 293 S.W. 327, and Texas Osage Co-Operative Royalty Pool v. Sullivan, Tex.Civ.App., 93 S.W.2d 566, 567, the facts were essentially the same as in the instant case and were held to be insufficient to justify a judgment canceling the deeds.

In Haskins v. Henderson, Tex.Civ.App., 2 S.W.2d 864, 865, Chief Justice Willson said: "'A certificate of acknowledgment is conclusive of the facts therein stated, unless fraud or imposition is alleged, and in which the grantee participated or had

knowledge.' Finley, J., in Herring v. White, 6 Tex.Civ.App. 249, 25 S.W. 1016; Ellis v. Lehman, 48 Tex.Civ.App. 308, 106 S.W. 453; Bryant v. Grand Lodge Sons of Hermann (Tex.Civ.App.) 152 S.W. 714; Ellington v. Bryant (Tex.Civ.App.) 293 S. W. 327." Also see Williams v. Pouns, 48 Tex. 141; Herring v. White, 6 Tex.Civ. App. 249, 25 S.W. 1016; Shelby v. Burtis, 18 Tex. 644, 645; Wiley & Co. v. Prince, 21 Tex. 637; Pool v. E. H. Chase & Co., 46 Tex. 207; Kocourek v. Marak, 54 Tex. 201, 205, 38 Am.Rep. 623.

■ We think the conclusion is inescapable that the judgment finds no support in the jury finding that Mrs. Tipton's acknowledgment was taken in the presence and hearing of her husband. See, also Blankenship v. Stricklin, Tex.Civ.App., 77 S.W.2d 339, 340; Blankenship v. Lusk, Tex.Civ.App., 77 S.W.2d 341; Waltee v. Weaver, 57 Tex. 569, 571; Wheelock v. Cavitt, 91 Tex. 679, 45 S.W. 796, and Breitling v. Chester, 88 Tex. 586, 32 S.W. 527.

■ From the foregoing conclusions it appears that the court should have instructed a verdict for appellants, unless the pleadings and evidence were sufficient to raise issues 4 and 5, to-wit, undue influence and duress, inducing the execution of the trust deed. However, it is unnecessary to determine whether or not undue influence or duress, or both such issues, were made questions for the determination of the jury, because they were determined adversely to plaintiffs, leaving, under the conclusions heretofore announced, no support for the judgment. We are, therefore, of the opinion the court should have sustained appellants' motion for judgment non obstante veredicto.

■ Appellants pleaded the four years' statute of limitation. Article 5529 provides: "Every action other than for the recovery of real estate, for which no limitation is otherwise prescribed, shall be brought within four years next after the right to bring the same shall have accrued and not afterward." It is the applicable statute of limitation in a suit to cancel a deed on the ground of insanity of the grantor. Pure Oil Co. v. Ross, 131 Tex. 41, 45, 111 S.W.2d 1076; Neill v. Pure Oil Co., Tex.Civ.App., 101 S.W.2d 402, writ refused; 15 T.L.R. 519; Lott v. Van Zandt, Tex.Civ.App., 107 S.W.2d 761. Article 5535 provides, in part: "If a person entitled to bring any action mentioned in this subdivision of this title be *at the time the cause of action accrues* * * * a person * * * of unsound mind, the time of such disability shall not be deemed a portion of the time limited for the commencement of the action and such person shall have the same time after the removal of his disability that is allowed to others by the provisions of this title."

 Plaintiffs' asserted cause of action to cancel the deed accrued contemporaneously with the execution of the deed on January 12, 1931. If at the time said cause of action accrued, Mrs. Tipton was not insane (as we have heretofore concluded), plaintiffs' cause of action became barred by limitation four years thereafter, which was prior to the institution of plaintiffs' suit for cancellation of the deed against appellants. Free v. Owen, 131 Tex. 281, 113 S.W.2d 1221, 1224; Art. 5535, R.S. 1925.

(Italics in the opinion are ours)

It is, therefore, ordered that the judgment, insofar as it adjudges a cancellation of the deed dated January 12, 1931, and an award of title and possession to Mrs. Tipton of the section of land conveyed by said deed, be and the same is hereby reversed and judgment rendered denying cancellation of said deed, and denying recovery of title and possession of said land by plaintiffs. In all other respects the judgment is affirmed.

Affirmed in part and reversed and rendered in part.