THE PURE OIL COMPANY v. ELLEN B. ROSS ET AL.

No. 7211.   Decided January 12, 1938.
Rehearing overruled February 9, 1938.
(111 S. W., 2d Series, 1076.)

*Vinson, Elkins, Weems & Francis,* and *David T. Searls,* all of Houston, for plaintiff in error.

A suit filed on May 5, 1934, to reform a lease by changing the date of April 27, 1933, to April 27, 1929, on the ground of mutual mistake is barred by the four years statute of limitation. R. S. 1925, Article 5529; McCampbell v. Durst, 40 S. W. 315; Chicago, T. & M. Cent. Ry. Co. v. Titterington, 84 Texas 218, 19 S. W. 472; Yost v. Wilson, 27 S. W. (2d) 286.

*Maco Stewart* and *Noble Carl,* both of Galveston, and *Albert J. De Lange* and *Geo. T. Burgess,* both of Houston, for defendants in error.

MR. JUDGE GERMAN, of the Commission of Appeals, delivered the opinion for the Court.

On April 26, 1928, J. O. Ross and wife, Ellen B. Ross, executed and delivered to Paul Lobit an oil, gas and mineral

lease upon 1,528.11 acres of land in Galveston County, Texas. The portions of said lease which are material here are as follows:

"This grant shall terminate on April 27, 1933, and none of the provisions hereof shall be effective thereafter, unless, on or before such date, the Grantee either: (1) notifies Grantor that it will drill a well on the land, in which event the Grantee shall begin operations therefor within sixty (60) days from such date and shall drill such well with reasonable diligence to completion or abandonment in an honest effort to discover minerals in paying quantities; or, (2) pays Grantor One & No/100 Dollars ($1.00) per acre for all or that part of the land which the Grantee elects to continue to hold hereunder, releasing any balance thereupon or at any time thereafter on demand of above mentioned; and the Grantee may maintain his rights in the Lessor, which payment shall maintain the Grantee's rights in effect without any operations for 12 months from the date above mentioned; and the Grantee may maintain his rights in effect without any operations for successive 48 months' periods, aggregating four (4) additional years, by paying Grantor, on or before the beginning of such respective periods, One No/100 Dollars ($1.00) per acre for all or that part of the land which the Grantee has elected to continue to hold hereunder. Payments may be made to Grantor personally or by mailing, on or before the due date of the payment, letter addressed to the Union National Bank of Houston, Texas (or its successor), transmitting the Grantee's check with instructions to such bank to deposit same to Grantor's credit; such bank being hereby constituted Grantor's agent."

By mesne assignments in the usual form, this lease as to 463.11 acres of the tract passed to The Pure Oil Company for a valuable consideration, the assignment to it being dated April 12, 1933.

The tract of land covered by the lease was the separate estate of Ellen B. Ross. Prior to February 10, 1933, J. O. Ross died, and on that date Mrs. Ross conveyed the 463.11 acres to Maco Stewart. At the same time she assigned the lease of August 26, 1928, to Stewart, reserving a 1/32d royalty interest.

On April 24, 1933, The Pure Oil Company transmitted to Stewart cashier's check for $463.11 to pay rentals for one year on the 463.11 acres. This check was deposited to the account of Stewart. March 21, 1934, The Pure Oil Company transmitted to Stewart check for $463.11 to pay rentals for another year on the 463.11 acres, but the check was refused.

May 5, 1934, Maco Stewart and others instituted this suit against The Pure Oil Company and others in the district court of Galveston County. As the nature of this suit becomes of .controlling importance, we will endeavor to make an accurate summary of the allegations of the petition tending to show the nature of the cause of action asserted. The parties will be designated as in the trial court.

After alleging the execution of the lease of April 26, 1928, by Ross and wife to Lobit, it is alleged by plaintiffs that the words and figures "April 27, 1933" were inserted in the lease by mutual mistake. It is claimed that the real agreement between the parties was that, while the lease was to have a primary term of five years, the date "April 27, 1933" should have been April 27, 1929, and that the rental payments of $1.00 per year per acre were actually payable on or before April 27, 1929. It is then alleged that as the true agreement was that the first annual rental should be paid on or before April 27, 1929, and no rental was paid prior to April 24, 1933, the lease had become automatically forfeited and was void.

There was a further allegation to the effect that the provisions with reference to extension of lessee's rights without operations "from the above mentioned date" were erroneous and improper, because of the fact that the date mentioned, to-wit, April 27, 1933, should have in fact been April 27, 1929. It is also alleged that the provisions with reference to extension of time for operations were ambiguous.

There was a special allegation that although The Pure Oil Company deposited in the Union National Bank of Houston, Texas, the sum of $463.11 on April 25, 1933, and same was transmitted to and accepted by plaintiff Stewart, nevertheless the same was accepted by him under mistake and without knowledge of what rentals it was intended to pay. It was also alleged that on March 23, 1934, The Pure Oil Company again deposited $463.11 to the credit of plaintiff Stewart in the Union National Bank of Houston, the depository named in the lease, to pay rentals for one year, but that plaintiff had not accepted same as a valid payment of rental.

There were various other allegations, but they are of no consequence in determining the nature of the cause of action. They at the most merely tended to show practical construction of the lease by parties other than The Pure Oil Company. The prayer was as follows:

"Wherefore, plaintiff prays that defendants be cited to appear and answer herein, and upon hearing hereof that said

lease be cancelled and the cloud cast upon plaintiff's title by said lease be removed and decreed to be of no further effect, / for costs, equity, and general relief."

Answering the foregoing petition, the defendant The Pure Oil Company, which was the real defendant, among other things pleaded the four years statute of limitation. On November 14, 1934, in a trial before the Court without a jury, judgment was entered in favor of plaintiffs, the gist of which was as follows:

"It is, therefore on this the 14th day of November, 1934, ordered, adjudged, and decreed that the cloud cast on the title of plaintiffs by virtue of certain mineral lease from Ellen B. Ross and J. O. Ross to Paul Lobit, dated April 26, 1928, and recorded in Book 410, page 514, and by virtue of assignment from said Paul Lobit to Charles Lauer of record in Book 434, page 168, and assignment from said Charles Lauer to Larry W. Morris of record in Book 428, page 91, and assignment from said Lauer and Morris to Pure Oil Company of record in Book 462, page 288, be and is hereby removed, and said mineral lease and the record thereof and said assignments are hereby annulled and declared to be void and of no further force and effect."

The Court of Civil Appeals affirmed the judgment of the trial court, holding, among other things, that the cause of action asserted was not barred by the four years statute, but was controlled by Article 5509, being the five years statute. 98 S. W. (2d) 1045.

This holding was based on the conclusion that the action was one to remove cloud from title, and not for reformation of the lease. The five years statute was of course not applicable at all, as no question of adverse possession was involved.

A careful analysis of the petition in this case leaves no doubt whatever that its primary purpose was to reform or correct the lease of April 26, 1928, so as to make it reflect what plaintiffs claimed to be the true agreement of the parties. Two things stand out clearly. First, this lease on its face, and without reformation, under the allegations and proof, was in full force and effect at the time the suit was filed. Second, if the lease had been reformed so as to speak the agreement as contended for by plaintiffs, there would have been no cloud left upon plaintiffs' title, and they would have been invested with complete, clear and unclouded title without any decree of the court to that effect. The suit was simply to correct the lease by striking out "1933" and inserting in lieu thereof "1929," and then to have the court declare it forfeited by reason of its own

terms. It could not be declared forfeited until reformed. In a very similar situation the Court of Civil Appeals in the case of Neill v. The Pure Oil Company et al., 101 S. W. (2d) 402, in which writ of error was refused, stated the rule for testing the nature of an action in order to determine whether or not the four years statute was applicable. Speaking with reference to the deed of an insane person and an action to cancel such deed, the court said:

"Hence, as a voidable deed, it effectually accomplishes the thing sought to be accomplished, until set aside in a suit for rescission or cancellation. Such a deed prima facie conveys the title to the land, and, where the recovery of the title necessarily follows the rescission or cancellation of the deed, the action brought thereon is not, strictly speaking, a suit to recover real estate. The recovery of the land could not be obtained until the deed was cancelled; the judgment for the land would be the consequence of the relief primarily granted, and could not, but for that relief, be recovered."

The following cases, among many others that could be cited, are in point: Production Company v. Palmer, 230 S. W. 1017 (writ refused); Barclay v. Falvey, 100 S. W. (2d) 791 (writ refused); Cleveland State Bank v. Gardner, 286 S. W. 173; Hamilton v. Green, 166 S. W. 97; McCampbell v. Durst, 15 Texas Civ. App. 522, 40 S. W. 315.

We are not unmindful of the line of decisions to the effect that the owner of real estate in possession may maintain suit to remove cloud upon title cast by a void instrument, and in such event the suit is not barred by the four years statute. See State Mortgage Corp. v. Ludwig, 121 Texas 268, 48 S. W. (2d) 950, and authorities cited. In the present case, however, in the absence of reformation, the lease was not void. The question of mistake had to be litigated before it could be determined void. The action therefore was one for reformation and cancellation, and was barred by the statute of four years limitation.

Plaintiffs have filed in this Court what is designated a motion to dismiss. It in no manner questions the jurisdiction of the Court, but is a discussion of the merits of the case. The gist of their contention is this: That admitting the date 1933 was correct, and that the payment of rentals in 1933 extended the lease for twelve months, nevertheless the contract required, after the first twelve months' extension, that the rentals be paid at the rate of $1.00 per acre every month; and therefore the lease became forfeited one month after April 27, 1934. This contention is wholly inconsistent with plaintiffs' pleadings and

proof. It was alleged that the provision for extension after the first twelve months' period was ambiguous; and plaintiffs offered proof to show the real intent. Paul Lobit as witness for plaintiffs testified that nothing was said about "48 months' periods," and that the agreement was to pay rentals at the rate of $1.00 per acre per year.

The judgments of the Court of Civil Appeals and of the trial court are reversed, and judgment is here rendered in favor of plaintiff in error.

Opinion adopted by the Supreme Court January 12, 1938.

Rehearing overruled February 9, 1938.