## GLASSCOCK et al. v. SINCLAIR PRAIRIE OIL CO. et al.

### Civ. No. 4308.

United States District Court
S. D. Texas, Houston Division.

Jan. 4, 1950.

Massey & Hodges, of Columbus, Texas, and Kemp, Lewright, Dyer & Sorrell (W. M. Lewright), of Corpus Christi, Texas, for plaintiffs.

Baker, Botts, Andrews & Parish (J. C. Hutcheson, III), of Houston, Texas, for defendants.

CONNALLY, District Judge.

The plaintiff, C. G. Glasscock, Sr., under date of October 30, 1942, executed an oil, gas and mineral lease covering in excess of 8,400 acres of land in Colorado County,

Texas to the defendant, Sinclair Prairie Oil Company. C. G. Glasscock, Sr. and those who hold under him, as plaintiffs, are here suing Sinclair Prairie Oil Company and the Coast Company, an assignee of Sinclair, as defendants, seeking to have judgment canceling and terminating said lease, except as to 1,280 acres which is described.

The lease is for a primary term of 5½ years and so long thereafter as oil, gas, sulphur or other mineral is produced from said land. It contains the usual provisions for the payment of royalty, for proportionate reductions in the rentals and royalties if lessor owns less than fee simple title, for the use of royalty free oil and gas for operations of the lessee and for free assignability. The parties differ in their interpretation of par. 4 of the lease, which in general deals with the subject of the payment of delay rentals.

Said par 4 provides substantially that unless Lessee pays to Lessor the sum of $23,692 prior to April 30, 1943, the lease shall terminate; if operations for the drilling of a well be not commenced on or before April 30, 1944, the lease shall terminate unless Lessee pays to the Lessor a rental of $8,423, which payment shall cover the privilege of deferring the commencement of drilling operations for one year. Further provision is made for like payments annually during the primary term to cover the privilege of deferring the commencement of drilling operations. Thereafter the lease contains the following language, interpretation of which gives rise to this controversy: *"Operations for the drilling of a well or reworking operations on any well on said land or production from any well thereon shall continue this lease in force only in so far as this lease covers a tract for each such well with respect to which operations for drilling are being conducted, or on which reworking operations are being conducted, or from which production is being obtained, containing not more than 640 acres of land (for each such well) to be designated by Lessee,* such respective tracts of not more than 640 acres to be of such shape or configuration as may be designated by Lessee with the well on any part

thereof. Each and every such designation shall be made by Lessee by filing for record in the office of the Clerk of the County Court of Colorado County, Texas, a description of such tract of not more than 640 acres. The aforementioned rental payable by Lessee to cover the privilege of deferring commencement of operations for the drilling of a well for periods of twelve (12) months each during the primary term shall be reduced by an amount equal to One Dollar ($1) per acre for each acre of land including within any tract or tracts which Lessee is holding or entitled to hold on the due date of the rental payment in question, by virtue of the designation by Lessee prior to such due date of a tract or tracts as above provided and the conduct of drilling or reworking operations thereon or obtaining production therefrom." (Emphasis mine)

During the primary term the lessee completed a producing oil well, known as "Sinclair Well No. 2", which has continuously produced oil in paying quantities. Shortly before expiration of the primary term Coast Company (holding under Sinclair) began drilling its "Coast Company No. 1", which well was completed as a producing oil well and has been producing in commercial quantities ever since.

During the primary term, lessee paid the delay rentals provided for and has paid the royalty since production was obtained. The lessor does not complain of any breach of these provisions. The lessor contends that the lease terminated at the end of the primary term as to all except two tracts of 640 acres each, surrounding Sinclair Well No. 2 and Coast Company Well No. 1, and that continuous production of oil in paying quantities did not keep the remainder of the lease in force after termination of the primary term, by reason of the construction which the lessor places upon the language from par. 4 of the lease quoted above. Lessor contends that the italicized language, to the effect that production from any well shall continue the lease in force only in so far as the lease covers a tract of not more than 640 acres surrounding such well, is a provision which limits and modifies the granting clause of such lease, which is

found in par. 2 and reads as follows: "Subject to the other provisions herein contained, this lease shall be for a term of five and one-half (5–½) years from this date (called "primary term") and so long thereafter as oil, gas, sulphur or other mineral is produced from said land, or drilling or reworking operations are prosecuted, as is hereinafter provided."

Lessor points to the provision in the granting clause "subject to the other provisions herein contained" and argues that the language of par. 4 constitutes one of the "other provisions" therein referred to. On the other hand, the lessee contends that the emphasized language of par. 4, and in fact par. 4 in its entirety, concerns only the payment of delay rentals *during the primary term;* and that at the expiration of the primary term, the production of oil in paying quantities from a single well was sufficient to hold the entire lease. It is the lessee's contention that the provision in question actually is one inserted for the benefit of the lessor; and that as properly interpreted it means that annually during the primary term the full delay rental of $8,423 must be paid to continue the lease in force unless drilling is in progress or production secured, in which event a 640 acre tract surrounding such well would be relieved of delay rental payments.

After a careful consideration of the lease in its entirety and of the exhaustive briefs filed by counsel for both parties, I am of the opinion that the lease is clear and unambiguous and that the disputed provisions of par. 4 thereof apply only to the payment of delay rentals during the primary term; and that at the expiration of the primary term, the lease was continued in effect in its entirety by the production of oil in paying quantities from Sinclair Well No. 2 and the drilling and subsequent completion of Coast Company Well No. 1.

First, it is noted that par. 4 in its entirety deals with the payment of delay rentals and sets out the dates, amounts and manner of making such payments. The inclusion of the disputed language as an integral part of par. 4 would seem to indicate that it was limited in its effect to the same general subject matter. It is noted further that earlier in par. 4, the provision of the lease providing for the payment of delay rental of $8,423 annually, is qualified by the parenthetical qualification "(less any amount deducted therefrom as hereinafter provided)". I construe this language to refer to the possible reduction in the annual delay rental payment of $8,423 which might be made under the terms of the disputed language. Similarly, following the questioned language and as part of par. 4 is found the provision, apparently explanatory of the questioned language, providing that "the aforementioned rental" payable by lessee shall be reduced by an amount equal to $1 per acre for each acre of land included within any tract which lessee is holding, by virtue of the designation of a tract on which drilling or reworking operations are conducted or from which production is obtained.

Looking at other portions of the lease, it is noted that par. 6 provides that if at the expiration of the primary term production is not being had on said land, but lessee on or before that date commences reworking operations, "then this lease shall continue in force so long as such operations are being continuously prosecuted on said land;", and provides further that if, as result of such reworking operations, oil or gas be produced, "this lease shall continue in force so long as any of them is produced".

Similarly, par. 7 provides that if oil or gas is produced after the expiration of the primary term, but for any reason shall cease or terminate, the lessee shall have the right within ninety days from such cessation to resume drilling or reworking operations, "In which event this lease shall remain in force so long as such operations are continuously prosecuted, * * * and if they result in production of oil, gas, sulphur or other minerals, so long thereafter as any of them is produced". All of the provisions refer to "this lease" or "the lease" as an entirety and make no reference to the possibility that portions may be held or other portions lost by production of one or more wells at expiration of the primary term.

Lastly, and probably of the greatest significance, a reference to the granting clause found in par. 2 of the lease, quoted above,

contains no language which in my opinion in any way qualifies or limits its application as plaintiffs contend. I do not believe the phraseology, "subject to the other provisions herein contained", on which lessor places great emphasis, coupled with the language of par. 4, can be construed to constitute a limitation on the express provision that the lease shall be for a term of 5½ years and so long thereafter as oil, gas, sulphur or other mineral is produced from said land. In my opinion, the construction which the lessor seeks to place upon the disputed language is a strained and unnatural one which would render that clause of the lease entirely inconsistent with the other portions which I have mentioned. Similar provisions of oil and gas leases have been similarly interpreted in the following cases: Lido Oil Co. v. W. T. Waggoner Estate, Tex.Civ.App., 31 S.W.2d 154, the same case on prior appeal, the opinion of the Sup.Ct. of Tex. being reported W. T. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27; and Johnson v. Montgomery, Tex.Civ.App., 31 S.W.2d 160.

Plaintiffs allege in the alternative that if the language of the lease be not construed as they contend, then it is ambiguous, and allege extraneous facts as to the negotiations between the parties prior to the execution of the lease as tending to show that it should be construed as plaintiffs contend. While, as I have stated, I do not believe the lease is ambiguous, if it be considered that the disputed language raises an ambiguity as to the termination of lessee's estate, such ambiguity would not permit a forfeiture or termination of the determinable fee acquired by the lessee thereunder. Ryan v. Kent, Tex.Com.App., 36 S.W.2d 1007; Decker v. Kirlicks, 110 Tex. 90, 216 S.W. 385.

The plaintiffs further allege by alternative plea that "if such lease does not provide for its termination in the manner contended by Plaintiffs herein (which is not admitted by them but expressly denied), then its failure so to do was the result of the mutual mistake of the parties thereto and of the scrivener who actually prepared the same", and seek reformation to have the lease conform to the true intent of the parties. The defendants reply to this allegation by pleading the four year statute of limitations (Tex.Rev.Civ.Stat. 1925, art. 5529), contending that plaintiffs' cause of action for reformation, if any, began at the time of execution of the lease (Oct. 30, 1942). This suit was filed May 5, 1948. In the brief, the plaintiffs contend that the cause of action for reformation only accrued when they learned that the language of the lease is to be construed in a manner other than the one for which they contend, or perhaps when they learned that the defendants were contending for such contrary interpretation. It is noted that the plaintiffs do not allege any specific mistake in the verbiage used—no wording is therein contained which they allege should have been omitted or nothing is omitted which they contend should have been included. I believe a fair statement of their position is that the wording of the lease itself is proper; they construe the wording in a given fashion; if the Court construes it differently and if they are in error in their construction, then the lease should be redrafted in such manner as to bring about the result which they seek. While the parties have not discussed the question in their brief, it would appear to me that this alleges a mistake of law rather than a mistake of fact, and I have doubt whether reformation would lie to correct such an alleged error; but in any event, it is not denied that the parties were all conversant with the language of the lease. If there was anything wrong with the wording, it has been known all the while. The cause of action for reformation, if one exists, I believe under these circumstances is barred by the four year statute of limitations. Pure Oil Co. v. Ross, 131 Tex. 41, 111 S.W.2d 1076; Kahanek, v. Kahanek, Tex.Civ.App., 192 S.W.2d 174; Kennedy v. Brown, Tex.Civ. App., 113 S.W.2d 1018; Barclay v. Falvey, Tex.Civ.App., 100 S.W.2d 791.

I think the motion for summary judgment is good and will be granted. Let decree be prepared in harmony herewith.