Ed MASSEY et al., Appellants,

v.

E. B. LEWIS et al., Appellees.

No. 6798.

Court of Civil Appeals of Texas.

Texarkana.

June 9, 1955.

Rehearing Denied July 7, 1955.

See, also, 256 S.W.2d 895.

Cornelius & Cornelius, Jefferson, Jas. R. Cornelius, Jr., Lufkin, for appellants.

Vinson, Elkins, Weems & Searls, Thomas Fletcher, J. W. McCartney, Houston, E. B. Lewis, Jacksonville, for appellees.

HALL, Chief Justice.

This is an action by appellants Ed Massey and wife, Angie Massey, J. R. Cornelius, Sr., and J. R. Cornelius, Jr., against Union Producing Company and E. B. Lewis, appellees, to recover an undivided $^{50}\!/_{98}$ interest in a 60-acre tract of land, a part of the Stephen Jarboe Survey located in Cherokee County, consisting of $^{1}\!/_{98}$ undivided interest inherited by appellant Ed Massey from his grandmother, Elizabeth Swindell, and $^{49}\!/_{98}$ undivided interest claimed by appellants under a parol sale or gift from B. P. Swindell.

This action is one in trespass to try title to $\frac{1}{2}$ undivided interest in the above land, appellants alleging oral sale or gift of said interest, and title under the 10-year statute of limitation. Vernon's Ann.Civ.St. art. 5510.

The appellee Union Producing Company answered with plea of not guilty and as a bar to appellants' cause of action, the 3-, 5-, 10- and 25-year statutes of limitation, estoppel, and the 4-year statute of limitation. Appellee E. B. Lewis' answer was similar to that of the Union Producing Company.

Trial was to a jury on special issues. At the close of appellants' testimony ap-

pellees made motion for instructed verdict which was overruled, and at the close of all the testimony appellees made another motion for instructed verdict which was also overruled. Appellants also moved for an instructed verdict. The case was given to the jury and after a day and a half of deliberation, the jury being unable to agree on a verdict, the trial court, on motion of appellees, withdrew the case from the jury and rendered judgment for appellees for title and possession of the land in controversy.

Appellants bring forward 31 points, the first five of which complain of the action of the trial court in withdrawing the case from the jury and entering judgment for appellees. Appellants assert this was error because there were disputed issues of fact to be determined by the jury.

The 60-acre tract of land involved herein constituted the community estate of B. P. Swindell and his wife, Elizabeth Dew Swindell. Appellant Ed Massey and Jessie Mae Brittian each inherited a portion of the community estate as heirs of Elizabeth Swindell, their grandmother, each inheriting a 1/98 interest of the property in controversy. In addition to the 1/98 interest inherited by Jessie Mae Brittian, she also claims by deed from B. P. Swindell, her step-grandfather, to a ½ undivided interest in the 60-acre tract. Both of these interests she conveyed to appellee E. B. Lewis, and Union Producing Company now holds an oil and gas lease covering the above interests as well as other interests in the 60-acre tract.

Appellants Ed Massey and wife claim, first, their grandfather B. P. Swindell's undivided ½ interest in the land under a parol sale or gift from B. P. Swindell; and, second, under the 10-year statute of limitation. Appellant Ed Massey testified that his grandfather, B. P. Swindell, came to see him and asked him and his wife to move to his home to take care of him in his old age. Massey was living about ¾ of a mile from the Swindell homestead. Massey testified that his grandfather told him that if he would move over there "He'd give me

his place," the land in controversy here. Appellant Massey also testified that "He (B. P. Swindell) said, 'If you will move over there you can have my part if you take care of me.'" He testified that he went to his grandfather's home and took care of him for about a year and a half, living in the house with him. That toward the end of this time he requested his grandfather to move away for a time while his wife was to be delivered of a child. This Swindell did.

Shortly thereafter, B. P. Swindell, being in need of medical treatment, went to Jacksonville to the home of his step-granddaughter, Jessie Mae Brittian. He remained within the home of Jessie Mae and her husband, with the exception of three days, until he was carried to the Texas Confederate Home in Austin where he died in 1931. While living with Jessie Mae in Jacksonville, he executed and delivered to her a deed covering his interest in the 60 acres. This deed is strongly contested by appellants as being void for want of description and it will be discussed herein later in detail. While B. P. Swindell was at Mrs. Brittian's home in Jacksonville, she went to his old home where appellants were living, got his trunk, bed, and his deed to the property. After Mr. Swindell went to the Old Soldiers' Home, he never returned.

Appellant Angie Massey, wife of Ed Massey, testified in respect to the parol gift or sale of the land to them by B. P. Swindell, that "He asked us would we go over and stay with him. He said if we would, he would make it our home, that would be our home because he said that he had to have somebody with him and he would like for us to stay with him and then that would be our home * * *."

A Mr. John Jolly, a witness for appellants, testified to hearing a conversation between B. P. Swindell and the Masseys with respect to moving on his place. He stated: "He told them that if they would move in the house with him and take care of him, he would leave them his part of the place."

The Masseys claimed that they made the following improvements on the place: Repaired and rebuilt the old barn, cleared about five acres of land, cut posts off the land, repaired the fences around the place, and built cross-fences on the place for cattle. There is no evidence in the record that the Masseys ever paid any taxes on the property during the entire time they lived there.

The above testimony is the basis for appellants' claim of parol sale or gift of the land to them by B. P. Swindell. It is without dispute that Massey was the owner of a ⅛₈ inherited interest in the property from his grandmother, Elizabeth Swindell. His claim of a gift or sale by Swindell must be determined by the above facts. The consideration for the alleged parol sale or gift of the land was the promise of Ed Massey and wife to live with and take care of B. P. Swindell as long as he lived. There is no contention that they carried out this oral contract. It is without dispute that B. P. Swindell lived with appellants in his own home for about a year and a half. He left and went to Jacksonville and stayed in the home of his step-granddaughter, Jessie Mae Brittian, during which time he made a deed conveying to her the land in controversy. Shortly after this time Swindell was taken to the Texas Confederate Home in Austin where he lived continuously until 1931, the date of his death. In our opinion, the possession of Ed Massey and wife was not exclusive for the reason that B. P. Swindell, the owner of the property, was living with them (or they with him). It is our opinion that the evidence does not show an oral gift or sale of the land by Swindell to the Masseys in praesenti.

In the case of Hauser v. Zook, Tex.Civ. App., 278 S.W. 518, it is held that the statements by the donor that, " ' "Stay with me, take care of me, and the place is yours" ' ", and " ' "Do what you want, the property is yours," ' " were not sufficient as a present gift. With respect to these statements the court said:

"It may be, and the testimony shows, that the owners desired to give the property to appellants, but they did not do so prior to their death, and we are not permitted to execute such a deed for them. It was a mere conditional, verbal promise to convey land in futuro, such as is condemned by the statute of frauds, and therefore nonenforceable." Citing cases.

There were other statements and circumstances in that case that differ from the facts here, but the statements made by the donors are similar to the statements here. Moreover, appellants' position was consistent with his co-tenancy in the property. Especially is this true since they lived in the house with B. P. Swindell.

In Leverett v. Leverett, 59 S.W.2d 252, 255, w/r, Chief Justice Johnson of this Court, in discussing a situation somewhat similar to that here, states:

"The possession of H. P. Leverett was then consistent with his right of cotenancy with C. C. Leverett and there could be no such surrender of possession by C. C. Leverett as would constitute a visible and affirmative corroboration of the contention of the existence of the contract [parol sale], inconsistent with H. P. Leverett's right as such cotenant. For this reason the verbal contract depended wholly for its proof upon parol testimony and cannot be enforced." Citing cases.

So, here, appellants' possession of the property would not bring notice to their co-tenants of any claim by appellants other than as a co-tenant. Certainly the most that can be said of the testimony in this case with reference to parol sale or gift of the one-half undivided interest in the 60-acre tract of land is that it was based upon a consideration that appellants would take care of B. P. Swindell so long as he lived, and there is no hint that they did this, but, on the contrary, they performed that service for about a year and a half, leaving the remaining 4½ years of Mr. Swindell's care to the State of Texas.

In Emporia Lumber Co. v. Tucker, 103 Tex. 547, 131 S.W. 408, 409, dealing with somewhat different state of facts than here, the court makes this very pertinent statement: "To restate our conclusion, it is that, if the contract was a parol sale [as here] then the consideration, not having been performed, and it not being in writing, the contract cannot be enforced, and conferred no title upon the parties who refused to perform the conditions upon which the contract rested." While it is true that appellants did not refuse to perform the conditions of the contract, they failed to perform them.

■ It is our conclusion that the parol sale or gift fails, because there was no present sale or gift of the property such as would take it out of the statute of frauds and because the consideration failed. At most, the evidence presents a situation where the sale or gift would be complete after they had taken care of B. P. Swindell for the remainder of his life.

■ "Payment in full of the consideration is required before a parol sale of land can be enforced and a mere tender of the consideration or an expression of a willingness to pay such consideration or the balance due thereon is not sufficient." Salas v. Salas, Tex.Civ.App., 229 S.W.2d 881, 884, and authorities there cited. See also Robertson v. Melton, 131 Tex. 325, 115 S.W.2d 624, 118 A.L.R. 1505; Garza v. Martinez Mercantile Co., Tex.Civ.App., 208 S.W.2d 567, w/r, n. r. e.

■ We shall next consider appellants' claim to title under the 10-year statute of limitation. There are numerous parties who were tenants in common of the 60-acre tract of land with appellants before and after the death of B. P. Swindell. There is no dispute but that appellants and Jessie Mae Brittian are tenants in common under their grandmother, Elizabeth Swindell, each owning a small fraction of the fee by inheritance from her. This is shown by Massey v. Lewis, Tex.Civ.App., 256 S.W.2d 895, 896, w/r, n. r. e., on a former appeal of this case, wherein the question of proper parties was at issue, this Court held that the deed from "Jessie Mae Brittian joined by her husband, G. B. Brittian, under a deed dated February 11, 1939, forthwith filed for record, purports to convey to E. B. Lewis, a defendant below, an appellee here, a 60-acre tract in fee simple with general warranty of title. This deed purports to convey the entire interest or the whole of 60 acres. Its effect was to convey the interest acquired by her under the Swindell deed *and her inherited interest from her grandmother, Mrs. Swindell."* We will consider the opinion of this Court in the former appeal to be the law of the case.

To avoid the above holding of this Court and the numerous recitations in the record to the same effect, appellants' reply brief has attached to it a copy of the death certificate of Georgia Elizabeth Tyra, which shows the date of her death to be February 8, 1949. Nothing in the record before us reflects anything with respect to Georgia Elizabeth Tyra. The photostatic copy appended to appellants' reply brief does not appear in the record and for that reason it will not be considered by us for any purpose.

On the 23rd day of May, 1950, appellant Ed Massey gave to the Union Producing Company an affidavit with respect to the tract of land here in controversy. This affidavit is signed by appellant Ed Massey by his mark and is witnessed by his wife, Angie Massey, and W. W. Harkrider. It is sworn to before Jim McWilliams, Notary Public in and for Cherokee County, Texas. In this affidavit, among other things, Ed Massey states:

"This affiant has lived in the old B. P. Swindell home and has cultivated parts of the 30 to 35 acres of cleared land therein each and every year from 1925 until the present date. This affiant has occupied, used and enjoyed the benefits derived from the sale of the crops raised thereon with the knowledge and full consent of the various heirs of B. P. Swindell and wife Elizabeth Swindell. There has never

been any boundary disputes, adverse claims, squatters or other encroachments made to the land mentioned herein, except the lawsuit in 1896–7 previously mentioned herein. There has never been any oil, gas or other minerals produced from the 60 acre tract mentioned herein.

"This affidavit is given to the Union Producing Company for reliance thereon in connection with their investigation to the title to the said land now being held by the said company under the terms of the oil gas and mineral previously mentioned herein."

Appellant Ed Massey on cross-examination testified that B. P. Swindell came back to the old home where the Masseys were living just before he went to the Old Soldiers Home, at which time Swindell told him about making the deed to Pete Brittian and wife, Jessie Mae. Massey also testified that he never told Brittian about his claim of parol sale, nor did he ever tell Jessie Mae Brittian about it. He never did tell Jessie Mae that he was claiming against her. Massey testified, further, that he did not claim against her deed nor did he claim against her. Massey did not tell Lewis that he was claiming against him after his purchase of the land from Jessie Mae.

The attorney for appellees cross-examined appellant Ed Massey in detail about the affidavit made to Union Producing Company, and Massey agreed to practically every item in it. He testified that where the affidavit made reference to recordations of instruments and dates an abstract was produced, and Massey's wife, Angie, satisfied herself as to the correctness of the recitations in the abstract which also satisfied Massey. Massey was questioned particularly with reference to the paragraph in the affidavit set out above; that is, the part with respect to his living on the place for 25 years, etc., and he stated that it was true.

From the above testimony and the portion of the affidavit copied above, appellant Ed Massey makes it plain and certain that he was not claiming this land against the other heirs, his co-tenants. He was not only on the place with their knowledge and consent, but he was keeping all the proceeds of the farm with their consent. Under these circumstances, certainly after B. P. Swindell left for the Old Soldiers Home, the Masseys' occupancy of the land in controversy was with the consent of the other co-tenants. His holding was not adverse. He states that fact clearly in his affidavit given to the Union Producing Company which he can not now aver against. These statements are binding upon appellants and they will not be heard now to dispute them. In the case of Kimmell v. Tipton, Tex.Civ.App., 142 S.W.2d 421, 428, it is said:

"In Southern Surety Co. v. Inabnit [Eastland], 1 S.W.2d 412, 415, this Court in an opinion by Judge Hickman stated the rule with reference to the testimony of and admissions by a party to a suit as follows: 'The testimony of a party to a suit and admissions made by him must be construed as binding upon him, and not merely as raising issues of fact. His testimony is governed by different rules to those governing witnesses who are not parties. (Citing cases.)' * * *

" 'It is a wholesome rule, and should assuredly be applied in suits in equity, that the testimony given and admissions made by a party to a suit must be construed as binding upon him, and not merely sufficient to raise issues of fact.' "

At the conclusion of that case many authorities are cited which will not be repeated here, but to which reference is made. See also Garza v. Garza, Tex.Civ.App., 191 S.W. 2d 767; Happ v. Happ, Tex.Civ.App., 160 S.W.2d 227; Wedegartner v. Reichert, Tex. Civ.App., 218 S.W.2d 304. In such circumstances appellants showed no title to the land in controversy under the 10-year statute of limitation. One of the cardinal facts to be shown under a limitation claim is that the land was held adversely. Mosley v. Gulf Production Co., Tex.Civ.App., 111 S.W.2d 726, and authorities there cited.

It is our thought that the appellees, especially E. B. Lewis and Union Producing Company, are innocent purchasers of the property here in issue. As heretofore pointed out, Ed Massey admitted that he gave no notice to either of the appellees that he was claiming the property under a verbal sale or gift from his grandfather, B. P. Swindell. Massey's occupancy of the property, as heretofore pointed out, was under his right of co-tenancy as well as under his alleged oral gift or sale, so his occupancy would not excite an inquiry on the part of appellees as to his right of possession. The burden certainly rests upon appellants to allege and prove that appellees were not holders of the property in due course. The record reflects without dispute that Lewis and Union Producing Company paid a valuable consideration for the property, and appellants admit that they gave them no notice of their alleged oral gift or sale. Hall v. Wilson, Tex.Civ.App., 215 S.W.2d 204; Johnican v. Tomasino, Tex.Civ.App., 248 S.W.2d 207; Teagarden v. R. B. Godley Lumber Co., 105 Tex. 616, 154 S.W. 973; Elliott v. Wallace, Tex.Com.App., 59 S.W. 2d 109; Clayborn v. Gambill, Tex.Civ.App., 87 S.W.2d 508, w/r; Delay v. Truitt, Tex. Civ.App., 182 S.W. 732, w/r.

▆▆▆▆ Appellants complain of the admission in evidence of the deed from B. P. Swindell to Jessie Mae Brittian conveying the land in controversy. Their claim is that the deed is void for want of proper description. We have examined the authorities cited by both parties as well as the deed itself, and have concluded that from the data in the deed itself, especially with reference to monuments at its four corners and the reference to its being the interest of B. P. Swindell in the property, is sufficient data by which the land can be located. Extrinsic evidence is admissible to show the location. But aside from this, appellant's admission in his affidavit together with his admission in his deposition and cross-examination in this case, that the land here in controversy is "the same identical 60-acre tract described in the lease from E. B. Lewis to W. G. Darcy, Jr. * * *" is sufficient to locate the land. Union Produc-

ing Company holds the mineral lease on this land by assignment by W. G. Darcy, Jr. The following authorities, we think, are controlling of this question: Pickett v. Bishop, 148 Tex. 207, 223 S.W.2d 222; Cleveland v. Shaw, Tex.Civ.App., 119 S.W. 883; Booth v. Upshur, 26 Tex. 64; Easterling v. Simmons, Tex.Civ.App., 293 S.W. 690, w/r.

In Petty v. Wilkins, 190 S.W. 531, 534 (opinion by this Court) it is said:

"The specific grounds upon which it is claimed the description was insufficient are that the land in controversy was a part of the Joseph *Sloan* survey, whereas it was described in the deed as a part of the Joseph *Stone* survey; that it did not appear from the deed in what county and state the land it purported to convey was situated; and that 'the beginning in the description was not sufficiently located in order to describe any land.' We were, and are, of opinion the deed was not on its face void for uncertainty in the description of the land it purported to convey, because it appeared therefrom that the land therein described might be identified as the land in controversy by proof showing that it was 'known as the place built on by Thos. Davis and lastly occupied by G. N. Breckenridge.' The rule is that a deed is not void for uncertainty unless on its face the description cannot by extrinsic evidence, be made to apply to any definite land. Waterhouse v. Gallup [Tex.Civ.App.], 178 S.W. 773; Roberts v. Hart [Tex.Civ. App.], 165 S.W. 473."

This contention is overruled.

▆▆▆▆ Points 8 and 9 of appellants assert that they should have recovered the property under the doctrine of prior possession. Appellants state in their brief:

"To invoke the rule (of prior possession) three things must appear: (1) Prior possession; (2) exclusive dominion; and (3) no title in opposing party."

In applying this rule to the facts here, we find that the parties were in prior possession as co-tenants as well as under the asserted parol sale or gift. If they had exclusive dominion, it was with the knowledge and consent of their co-tenants as plainly stated in Ed Massey's affidavit, witnessed by his wife. We think, as heretofore pointed out, under the admissions of appellant in his affidavit, in his cross-examination, and his deposition, that the appellees have established their title to the land. In our opinion, appellants' claim to this land for the reason above stated does not come within the rule quoted above. And the authorities cited by appellants under these points are not in point under the facts in this case. As heretofore pointed out, appellants' possession could be attributable as easily to his right of co-tenancy as to any other claim asserted by him.

Appellants bring forward points 10 and 11 by which they assert that the trial court erred in refusing to permit appellant Angie Massey to testify as to the mental condition of B. P. Swindell shortly prior to March 9, 1926, the date of the deed from him to Jessie Mae Brittian. In our opinion this point presents no error for the reason that the proffered testimony was barred by the 4-year statute of limitation. R.S. Art. 5529. From the time the Swindell deed was executed March 9, 1926, to the filing of appellants' amended petition upon which they went to trial, filed August 18, 1951, more than 25 years had elapsed. The statute above referred to effectively barred any testimony by appellants with respect to the sanity of Swindell, the grantor. This testimony could have been offered for no other purpose than to avoid the deed from Swindell to Brittian. Neill v. Pure Oil Co., Tex.Civ.App., 101 S.W.2d 402, w/r; Pure Oil Co. v. Ross, 131 Tex. 41, 111 S.W.2d 1076, and authorities there cited; Kimmell v. Tipton, Tex.Civ.App., 142 S.W.2d 421.

Appellants bring forward numerous points in which they claim the trial court committed error, in refusing to permit appellants Ed Massey and wife, Angie Massey, to testify in explanation of the affidavit which Ed Massey gave to Union Producing Company. We are familiar with those decisions cited in appellants' brief, namely, Stanolind Oil & Gas Co. v. State, 136 Tex. 5, 145 S.W.2d 569, and Farr v. Kirby Lumber Corp., Tex.Civ.App., 203 S.W.2d 815, to the effect that appellant has the right under certain circumstances to explain an affidavit or admission previously made. We do not think that these authorities are controlling here for the reason that appellant Ed Massey admitted on cross-examination and by reference in his deposition on a former trial of this case that he made the affidavit and that the statements which he now seeks to explain were made by him and that they were true. So, in view of his admission in the record on this trial as to the truthfulness of the statements in his affidavit in all material respects we think these points present no error and they are overruled.

By several points appellants assert that the trial court erred by not permitting them to introduce in evidence several letters purporting to be from B. P. Swindell while he was in the Confederate Home at Austin. The record discloses that B. P. Swindell was an illiterate man, unable to read or write, and signed all instruments by his mark. No pretense is made in this record that Swindell himself wrote the letters received by appellants. In fact, it is clear that another person wrote the letters and signed Swindell's name to them. The trial court refused to admit the letters in evidence on two grounds: First, one of the letters was in derogation of the title Swindell had conveyed to Jessie Mae Brittian; and, second there was no proof made that Swindell authorized the letters to be written and signed. Had the letters been properly proven up, we think they would have been admissible in this case to show the feeling, if they did, between Swindell and appellants, except, of course, the letter which was in derogation of appellees' title. Appellees cite several authorities on the proposition to the effect that where "a

 purports to be from a person who alone knows certain facts and actually states such facts, this in connection with other circumstances is sufficient proof of its genuineness." We do not think that these authorities are controlling here for the reason that other people were cognizant of the facts contained in the letters and not Swindell alone. We would have to presume that some person in the Home wrote the letters for him. We can not do this and we know that he did not write them himself. Under such circumstances it is our opinion that the ruling of the trial court in refusing to admit the letters presents no error.

 Appellants also present point 31 to the effect that the trial court erred in refusing to permit Ed Massey, appellant, to testify that he received a letter from Jessie Mae Brittian demanding that he pay rent or move off the place; and further to testify that they did not comply with such demand. Appellants sought to have Ed Massey testify as to the contents of this letter. Appellees objected on the ground that the letter was the best evidence. The record reflects that Mrs. Angie Massey made a partial search for the letter but was unable to find it. She testified that it might be at another place where she had not searched, but she never made such search and the letter was never produced. Under such circumstances we think the ruling of the trial court refusing to permit Ed Massey to testify as to the contents of the letter without positive testimony that the letter was lost, was correct, and it is sustained.

The trial court awarded to appellees $5\%_8$ undivided interest in the land, which represents the undivided $4\%_8$ interest conveyed to Jessie Mae Brittian by B. P. Swindell and the $\%_8$ undivided interest inherited by her from her grandmother, Elizabeth Swindell, both of which interests were conveyed by Jessie Mae to E. B. Lewis. As to the $\%_8$ undivided interest of Ed Massey inherited from his grandmother, Elizabeth Swindell, the cause was dismissed without prejudice.

We have carefully examined all other points advanced by the appellants and the authorities cited by them as well as the opposing authorities cited by the appellees, and we have concluded that said points do not present error under all the facts in this case and they are overruled. The court correctly withdrew the case from the jury and rendered judgment for appellees.

The judgment of the trial court is affirmed.